Liza M. Walsh
Rukhsanah L. Lighari
CONNELL FOLEY LLP
85 Livingston Avenue
Roseland, New Jersey 07068
Tel. (973) 535-0500
Fax. (973) 535-9217

*Attorneys for Plaintiff,*
*Educational Testing Service*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDUCATIONAL TESTING SERVICE, | Civil Action No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ACTUATE CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Educational Testing Service (hereafter "ETS"), by its attorneys, as and for its Complaint against defendant Actuate Corporation (hereafter "Actuate"), alleges as follows:

### NATURE OF THE ACTION

1. In this action, ETS seeks, *inter alia*, preliminary and permanent injunctive relief in order to maintain the status quo concerning the parties' rights and obligations under the March 30, 2005 End User Software License Agreement ("License Agreement"), to prevent irreparable harm to ETS and ETS's customers that would result from defendant Actuate wrongfully terminating the License Agreement causing ETS to immediately cease using, and return to Actuate, essential software licensed under the License Agreement.

2. ETS develops and scores more than 50 million standardized tests annually, that are administered in more than 180 countries, at over 9,000 locations worldwide. The Actuate software licensed by ETS is used to generate score reports for a number of tests offered by ETS. These reports are then transmitted by ETS to examinees, and educational and government institutions.

3. If ETS were deprived of the use of the licensed Actuate software:

- ETS would be unable to generate score reports used to support several of its biggest tests. For example, in 2009 alone, ETS generated over 5 million test score reports utilizing the licensed Actuate software. ETS has no alternate way to generate these reports without the use of Actuate's software.

- ETS would be in breach of third-party agreements between ETS and several of its customers (*e.g.*, local and state school boards, and numerous educational institutions), to whom ETS is contractually required to provide test score reports.

- Some units of ETS would be entirely unable to conduct business.

- Thousands of examinees who take ETS's tests every day would not be able to receive their test score reports that are produced using the licensed Actuate software.

- ETS would suffer loss of existing customers, loss of potential customers, and immeasurable loss of customer goodwill.

### THE PARTIES

4. Plaintiff ETS is a non-profit corporation organized and existing under the Education Law of the State of New York, with its principal place of business at 666 Rosedale Road in Princeton, New Jersey 08541.

5. Upon information and belief, defendant Actuate is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2207 Bridgepointe Parkway, Suite 500, San Mateo, California 94404.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1367, 2201, and 2202, in that the amount in controversy exceeds $75,000 exclusive of interest and costs, this declaratory judgment action arises between citizens of different states, and there is a justiciable controversy between the parties regarding their respective rights and obligations under a valid and legally enforceable agreement entered into between them. This Court also has jurisdiction pursuant to 28 U.S.C. § 1338, for any and all claims arising under that section, including patent, trademark, copyright and unfair competition claims.

7. Actuate is subject to personal jurisdiction in this district because, *inter alia*, Actuate is registered to conduct business in New Jersey and, on multiple occasions, Actuate's employees traveled to ETS's headquarters in Princeton, New Jersey to provide services in connection with one or more agreements entered into between the parties. Actuate also had its employees on-site at ETS's headquarters in New Jersey for approximately 2-3 years.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391, since a substantial part of the events or omissions giving rise to ETS's claim occurred in this judicial district. In addition, defendant Actuate is subject to personal jurisdiction in this district, and is therefore deemed to reside in this district for venue purposes.

## FACTUAL BACKGROUND

A. **Plaintiff, ETS, and its business**

9. ETS is the largest private non-profit education research and measurement institution in the world. Since its formation in 1947, ETS has been the world leader in developing and administering standardized tests used for measuring skills and academic aptitude and achievement in connection with education assessment, admission to educational institutions, occupational and professional competency for individuals, and licensing or certifying

professionals, including teachers and other professionals in the field of education. ETS's customers include state and local school boards and school districts, educational institutions of higher learning including colleges and universities, and government and private businesses.

10. Many Americans have, at some point in their lives, prepared for and taken one or more of ETS's tests. Examples of tests developed and/or administered by ETS, and utilized by teachers, educators, governments, and/or businesses, include the Test of English as a Foreign Language™ ("TOEFL®"), the Test of English For International Communication™ ("TOEIC®"), the Graduate Record Examination® ("GRE®"), the Scholastic Aptitude Test ("SAT®"), and the Praxis Series™ assessments. ETS's Praxis Series™ assessments are used by many states, including New Jersey, as part of their teacher licensure and certification process. ETS's TOEFL® test is the most widely accepted English-language test in the world. In 2009 alone, ETS generated approximately 2.5 million TOEFL® test score reports.

11. ETS uses and relies on numerous third-party software programs (including Actuate's) in connection with its business operations. The licensed Actuate software is specifically used by ETS to generate scoring reports for TOEFL®, TOEIC®, the Praxis Series™, and other tests required by state or local educational boards.

12. ETS's reporting for the above tests makes up a substantial amount of its business. For example, in 2009 ETS generated over 5 million scoring reports relating to the above tests. Moreover, ETS is contractually obligated to transmit many of the reports it generates to each test-taker, as well as third-party educational and government entities. Therefore, it is crucial that the licensed Actuate software programs run uninterrupted and without interference.

**B.** **The License Agreement between ETS and Actuate**

13. On March 30, 2005, ETS and Actuate entered into a License Agreement, whereby Actuate granted ETS a license to use certain software programs in connection with ETS's business, including score reporting to ETS's customers.

14. Under the License Agreement, Actuate is required to provide ETS with "license keys" that allow ETS to use the Actuate software installed on ETS's computer servers in accordance with the scope of the License Agreement. ETS licensed Actuate's software for use in: (a) *development*, which allows ETS to develop and customize its scoring reports, as well as to test-run its score report system; and (b) *production*, which allows ETS to actually generate its score reports for commercial use and dissemination.

15. To date, ETS has paid Actuate approximately $1 million in connection with the products and services provided under the License Agreement.

**C.** **The Professional Services Agreement between ETS and Actuate**

16. In addition to the License Agreement, on April 21, 2005, ETS and Actuate entered into an Agreement for Professional Services ("Professional Services Agreement"). Under the Professional Services Agreement, Actuate agreed to provide development and consulting services in connection with the software licensed under the License Agreement, and that would run on the licensed Actuate software platform.

17. To date, ETS has paid Actuate approximately $2 million in connection with the development and consulting services provided by Actuate pursuant to the Professional Services Agreement.

**D.      Actuate's failure to provide ETS with updated software license keys**

18.     Under the License Agreement, Actuate is required to provide ETS with all updates to the licensed Actuate software, including updated license keys, provided that ETS has paid Actuate the maintenance fee for that year.

19.     In October 2008, ETS requested that Actuate provide the license keys for updated version 9 Actuate software.  At the time of this request, ETS had fully paid Actuate the maintenance fee for 2008.

20.     Actuate refused to provide ETS with permanent version 9 development license keys.  Instead, Actuate provided ETS with a temporary version 9 license key that automatically expired after 2 weeks.  To date ETS has not received any permanent version 9 development license keys.

**E.      Actuate wrongly accuses ETS of breaching the License Agreement**

21.     Notwithstanding its own breach of the License Agreement for failure to provide ETS with the required updated license keys, in December 2008, General Counsel for Actuate, Thomas McKeever, sent an undated letter to ETS's Director of Corporate Contracts, Alyce Diaz. Within the letter, Actuate accused ETS of using the Actuate licensed software in an unauthorized manner, and demanded additional licensing and maintenance fees in excess of $3 million.  As a pretext for making its unlawful and inappropriate demands for these additional fees, to which it is not entitled, Actuate falsely accused ETS of three purported violations of the License Agreement.

22.     First, Actuate claimed that ETS was violating the License Agreement by using development software for production, rather than development, purposes.  As a result, Actuate claimed that ETS owed additional license and maintenance fees in excess of $3 million.

23. Second, Actuate contended that ETS also violated the License Agreement by using the development software with multiple users, and for the purpose of performance testing allegedly beyond the authorized single user development. Actuate further stated that the language contained in the License Agreement governing restrictions applicable to the development software was not what was expected by Actuate, and that other language (set forth in Mr. McKeever's December 2008 letter) was more appropriate than the agreed upon contract language.

24. Third, Actuate claimed that ETS violated the License Agreement by moving the licensed Actuate software from one set of hardware (*i.e.*, CPU) to another, without first notifying Actuate and paying the appropriate license transfer and maintenance fees. As a result of this alleged violation, Actuate stated that ETS owed over $100,000.00.

F. **ETS did not breach the License Agreement**

25. On May 12, 2009, ETS – through its outside counsel – responded to Actuate's allegations that ETS misused the Actuate software. At the outset, ETS reminded Actuate that it was in breach of the License Agreement, based on its failure to provide permanent version 9 development license keys. ETS also provided detailed responses to each of Actuate's three allegations discussed above.

26. As to the first allegation, ETS affirmed to Actuate that it always used Actuate's software within the terms of the License Agreement. Indeed, the evidence provided by Actuate contradicted its allegations that ETS was using development software in a production environment.

27. As to the second allegation, ETS never exceeded the number of licensed developers using the Actuate software for development purposes. Moreover, the language in the License Agreement was the language discussed during the negotiations of the License

Agreement, and agreed to by the parties. Thus, there was no basis for Actuate's suggestion that replacement language proposed in Actuate's December 2008 letter should control.

28.     Finally, as to the third allegation of the License Agreement, ETS stated that the evidence on which Actuate relied predated the effective date of the License Agreement.

### G.     Actuate, in bad faith, precipitates the current dispute

29.     On or about August 12, 2009, Dan Earls, Corporate Counsel for Actuate, sent a letter responding to ETS's counsel's May 12, 2009 letter. Actuate ignored ETS's explanation, and continued to demand that ETS make payments for additional licenses, above-and-beyond what ETS had initially negotiated in good faith with Actuate and had paid in full. Moreover, Actuate demanded that ETS accept Actuate's December 2008 proposed unilateral revisions to the License Agreement concerning restrictions applicable to the development software.

30.     On or about September 21, 2009, ETS's outside counsel contacted Dan Earls of Actuate via electronic mail. Specifically, counsel for ETS requested a conference call to further discuss the issues between ETS and Actuate and the License Agreement.

31.     Neither Mr. Earls, nor anyone from Actuate, ever responded to ETS's counsel's September 21, 2009 e-mail.

### I.     Actuate materially breaches the License Agreement through wrongful termination

32.     On or about March 1, 2010, ETS received a letter via Federal Express from Dylan Boudraa, Director of Global Compliance from Actuate. Despite the fact that the letter was dated February 22, 2010, ETS did not receive the letter until March 1, 2010.

33.     The letter stated that Actuate was terminating the License Agreement, based on ETS's material, uncured breach of the Agreement. Actuate further stated that ETS no longer is licensed to use any Actuate software or receive any Actuate maintenance services. The letter also instructed ETS to "immediately discontinue use of all Software and Documentation and

within ten (10) days certify in writing to Actuate that all copies of the Software and Documentation, in whole or in part, in any form, have been returned to Actuate."

34. Through its March 1, 2010 letter, Actuate violated the provisions governing termination under the License Agreement by failing to provide the required thirty-day written notice of termination.

**J.  Actuate materially breaches the License Agreement by failing to provide ETS with the required software updates**

35. Based on Actuate's own material breach of the License Agreement – specifically in failing to provide the required permanent version 9 development license keys – ETS has initiated efforts to move to an entirely different software platform for generating its test reports. As a direct consequence of Actuate's material breach, ETS has incurred, and will continue to incur, substantial costs and expenses in developing, testing and implementing replacement reporting software.

## COUNT I
## DECLARATORY JUDGMENT

36. Plaintiff repeats and realleges the allegations of paragraphs 1 through 35 above as though fully set forth herein.

37. An actual controversy exists between ETS and Actuate regarding whether ETS has materially breached the License Agreement and whether, as a result, Actuate can terminate the License Agreement.

38. An actual controversy also exists between ETS and Actuate regarding whether ETS is entitled to receive permanent development license keys for version 9 of the Actuate software licensed under the License Agreement.

39. By reason of these actual and jusiticiable controversies, ETS is entitled to a declaratory judgment that:

      (a)      ETS did not breach the License Agreement as contended by Actuate;

      (b)      ETS does not owe Actuate the amounts it demanded based on ETS's alleged breach of the License Agreement;

      (c)      Actuate's termination of the License Agreement was wrongful, and constitutes a material breach of said agreement;

      (d)      Actuate's failure to provide certain software updates to ETS constitutes a material breach of the License Agreement;

      (e)      The License Agreement, and all terms thereunder, remains in full force and effect; and

      (f)      ETS's continued use of the licensed Actuate software does not infringe any of Actuate's copyrights, or patent or trademark rights, and does not constitute unfair competition.

**COUNT II**
**ACTUATE'S BREACH OF CONTRACT THROUGH**
**WRONGFUL TERMINATION OF THE LICENSE AGREEMENT**

40.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 39 above as though fully set forth herein.

41.    The License Agreement between ETS and Actuate constitutes a valid and enforceable contract between the parties.

42.    Actuate materially breached the License Agreement by terminating, without sufficient basis and without proper notice to ETS, the License Agreement, and ordering that ETS immediately discontinue using the licensed software and related documentation.

43.    ETS will be substantially and irreparably harmed should it be required to cease using the software and documentation for which it rightfully paid Actuate in return for a use license. ETS does not have an adequate remedy at law in this regard.

44. In the alternative, and in the event the Court determines that ETS has not been irreparably harmed, ETS will suffer damages as a result of Actuate's wrongful termination.

## COUNT III
## ACTUATE'S BREACH OF CONTRACT FOR FAILURE TO PROVIDE ETS WITH UPDATES TO LICENSED SOFTWARE

45. Plaintiff repeats and realleges the allegations of paragraphs 1 through 44 above as though fully set forth herein.

46. The License Agreement between ETS and Actuate constitutes a valid and enforceable contract between the parties.

47. Actuate materially breached the License Agreement by failing to provide permanent version 9 development license keys.

48. As a direct result of Actuate's material breach in failing to provide updated license keys, ETS has incurred increased costs and expenses, delays in the development cycle, and other damages.

49. Based on Actuate's material breach of the License Agreement in failing to provide updated license keys, ETS seeks compensatory damages.

## COUNT IV
## ACTUATE'S BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING UNDER NEW JERSEY STATE LAW

50. Plaintiff repeats and realleges the allegations of paragraphs 1 through 49 above as though fully set forth herein.

51. In addition to the express obligations contained in the License Agreement, there exists an implied covenant of good faith and fair dealing in the License Agreement under New Jersey law.

52. Actuate acted in bad faith and/or with intent throughout the performance of the contract and in respect of the events occurring prior to, and including, the termination of the

contract. For example, Actuate ignored ETS's responses to Actuate's allegations of breach of contract and terminated the Agreement without providing ETS the contractual right to cure any alleged breach.

53. As a result of its bad faith and intentional misconduct, Actuate materially breached the implied covenant of good faith and fair dealing under New Jersey law.

54. At all times relevant, ETS has acted in good faith with respect to Actuate and the performance of its obligations and responsibilities under the various agreements with Actuate.

55. ETS has suffered damages as a direct result of Actuate's material breaches. Specifically, as a direct result of Actuate's breach of the implied covenant of good faith and fair dealing, ETS has been denied the benefit of the bargain of the parties' contract.

56. In addition, ETS will suffer immediate and irreparable harm should those breaches continue.

## JURY DEMAND

Plaintiff, ETS, demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court provide the following relief:

(A) A declaration that:

1. ETS did not breach the License Agreement as contended by Actuate;

2. ETS does not owe Actuate the amounts it demanded based on ETS's alleged breach of the License Agreement;

3. Actuate's termination of the License Agreement was wrongful, and constitutes a material breach of said agreement;

4. Actuate's failure to provide certain software updates to ETS constitutes a material breach of the License Agreement;

5. the License Agreement, and all terms thereunder, remains in full force and effect;

      6.    Actuate's conduct giving rise to this action materially breached the implied covenant of good faith and fair dealing with respect to the License Agreement under New Jersey law; and

      7.    ETS's continued use of the licensed Actuate software does not infringe any of Actuate's copyrights, or patent or trademark rights, and does not constitute unfair competition.

(B)    Preliminary and permanent injunctive relief from this Court to maintain the status quo by ordering that the License Agreement remain in place;

(C)    An award of compensatory damages based on Actuate's misconduct and material breaches in connection with this case;

(D)    An award of all costs incurred by ETS in connection with this proceeding, including reasonable attorneys' fees; and

(E)    Such further and other relief as this Court may deem just and proper.

Respectfully submitted,

Dated:  March 11, 2010        By:    /s/ Liza M. Walsh
    Liza M. Walsh
    Rukhsanah L. Lighari
    CONNELL FOLEY LLP
    85 Livingston Avenue
    Roseland, New Jersey 07068
    Tel. (973) 535-0500
    Fax. (973) 535-9217

    OF COUNSEL
    Peter D. Vogl
    JONES DAY
    222 East 41st Street
    New York, New York 10017-6702
    (212) 326-3939

    Joseph Melnik
    JONES DAY
    1755 Embarcadero Road
    Palo Alto, California 94303
    (650) 739-3939

    *Attorneys for Plaintiff*
    *Educational Testing Service*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding.

Dated:  March 11, 2010            /s/ Liza M. Walsh
                                  Liza M. Walsh
                                  Rukhsanah L. Lighari
                                  CONNELL FOLEY LLP
                                  85 Livingston Avenue
                                  Roseland, New Jersey 07068
                                  Tel. (973) 535-0500
                                  Fax. (973) 535-9217

                                  *Attorneys for Plaintiff*
                                  *Educational Testing Service*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the monetary relief sought by plaintiff is in excess of $150,000 and that declaratory and injunctive relief is sought.

Dated:  March 11, 2010            /s/ Liza M. Walsh
                                  Liza M. Walsh
                                  Rukhsanah L. Lighari
                                  CONNELL FOLEY LLP
                                  85 Livingston Avenue
                                  Roseland, New Jersey 07068
                                  Tel. (973) 535-0500
                                  Fax. (973) 535-9217

                                  *Attorneys for Plaintiff*
                                  *Educational Testing Service*