Tonia Ouellette Klausner (tklausner@wsgr.com)
Michael J. Marando* (mmarando@wsgr.com)
**WILSON SONSINI GOODRICH & ROSATI**
1301 Avenue of the Americas
New York, NY 10019
(212) 999-5800

James A. DiBoise* (jdiboise@wsgr.com)
**WILSON SONSINI GOODRICH & ROSATI**
One Market Street
Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2000

Dylan J. Liddiard* (dliddiard@wsgr.com)
**WILSON SONSINI GOODRICH & ROSATI**
650 Page Mill Rd.
Palo Alto, CA 94304
(650) 493-9300

Attorneys for Defendant
Actuate Corporation

*Pro hac vice* admission pending

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDUCATIONAL TESTING SERVICE,<br><br>Plaintiff,<br><br>v.<br><br>ACTUATE CORPORATION,<br><br>Defendant. | Civil Action No. 10-1293 (AET) (TJB)<br><br>**DEFENDANT'S ANSWER WITH COUNTERCLAIMS AND DEMAND FOR JURY TRIAL**<br><br>*Document Electronically Filed*<br><br>**[Non-Confidential Redacted Version]** |

## ANSWER

Defendant Actuate Corporation ("Actuate"), by and through its attorneys, Wilson Sonsini

Goodrich & Rosati, P.C., hereby answers the complaint of Plaintiff Educational Testing Service

("ETS") as set forth below.  To the extent not explicitly admitted, all allegations of the Complaint

are denied.

## NATURE OF THE ACTION

1.      This paragraph is a statement of Plaintiff's legal position to which no response is

necessary or appropriate.  In addition, this paragraph also makes a statement as to the intention of

Plaintiffs, not a factual allegation, as to which no response is required.  To the extent any response

is deemed required, Defendant denies the allegations of paragraph 1.

2.      Defendant admits that Actuate licensed software to ETS, which was used to generate

score reports for ETS tests.  Defendants deny having knowledge or information sufficient to form a

belief as to the remaining allegations in this paragraph, and on that basis denies them.

3.      Defendant denies having knowledge or information sufficient to form a belief about

the truth of the allegations set forth in this paragraph, and on that basis denies them.

## THE PARTIES

4.      Upon information and belief, Defendant admits the allegations set forth in this

paragraph.

5.      Admitted.

## JURISDICTION AND VENUE

6.      Defendant admits that the Complaint purports to state a claim arising under 28

U.S.C. §§ 1332, 1338, 1367, 2201, and 2202.  Defendant admits that this Court has subject matter

jurisdiction over this matter.

7.     Defendant admits that this Court has personal jurisdiction over it for the purposes of this action.

8.     Defendant admits that venue is proper in this district.

## FACTUAL BACKGROUND

9.     Defendant denies having knowledge or information sufficient to form a belief about the truth of the allegations set forth in this paragraph, and on that basis denies them.

10.    Defendant denies having knowledge or information sufficient to form a belief about the truth of the allegations set forth in this paragraph, and on that basis denies them.

11.    Defendant admits that ETS has used Actuate's software in connection with its business and in connection with generating score reports.  Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in this paragraph, and on that basis denies them.

12.    Paragraph 12, at least in part, is a statement of Plaintiff's legal position to which no response is necessary or appropriate.  Defendant denies having knowledge or information sufficient to form a belief about the truth of the factual allegations set forth in this paragraph and on that basis denies them.

13.    Defendant admits that it entered into an End User License Agreement ("License Agreement") with ETS on March 30, 2005.  Defendant further admits that, through this License Agreement, it granted ETS CPU-based licenses for an iServer and eReport application and Developer Packs to be accessed only by Named Developers.  As to the remaining allegations in Paragraph 13, the content of the License Agreement speaks for itself.

14.    Defendant admits that it is required to provide the licensed software to ETS under the terms of the License Agreement.  Defendant further admits that it licensed ETS for both

"production" and "development," but denies Plaintiff's definition of those terms and further refers to the content of the License Agreement, which speaks for itself.

15.     Actuate admits that it has received approximately REDACTED in payments from Plaintiff in connection with the License Agreement.

16.     Defendant admits that it entered into an Agreement for Professional Services with ETS on or about April 21, 2005. Defendant further admits that it was to provide "advice and consultation" as set forth in the Professional Services Agreement. As to the remaining allegations in Paragraph 16, Defendant refers to the content of the License Agreement, which speaks for itself.

17.     Defendant admits that ETS paid Actuate approximately REDACTED in connection with the services rendered under the Agreement for Professional Services dated April 21, 2005.

18.     Paragraph 18, at least in part, is a statement of Plaintiff's legal position to which no response is necessary or appropriate. To the extent a response is required, Defendant denies Plaintiff's interpretation of the License Agreement and further states that it is not required to provide software updates and REDACTED where, as here, ETS is in breach of the License Agreement.

19.     Defendant admits that ETS requested Actuate to provide the REDACTED for servers ETSLN07, ETSLN08, ETSLN18, and ETSLN33 in October 2008 and that as of this request, ETS had paid certain maintenance fees for 2008, but was in material breach of the License Agreement.

20.     Defendant admits that it provided ETS with REDACTED REDACTED on or about November 3, 2008 . Defendant denies the balance of allegations set forth in this paragraph.

21.     Defendant admits that its General Counsel, Thomas McKeever, sent a letter to ETS's Director of Corporate Contracts, Alyce Diaz, in December 2008, giving notice to ETS of its breach

of the License Agreement, and the content of which speaks for itself. Defendant denies the balance of allegations set forth in this paragraph.

22.     Defendant admits that its General Counsel, Thomas McKeever, sent a letter to ETS's Director of Corporate Contracts, Alyce Diaz, in December 2008, giving notice to ETS of its breach of the License Agreement, and the content of which speaks for itself. Defendant otherwise denies the allegations set forth in this paragraph.

23.     Defendant admits that its General Counsel, Thomas McKeever, sent a letter to ETS's Director of Corporate Contracts, Alyce Diaz, in December 2008, giving notice to ETS of its breach of the License Agreement, and the content of which speaks for itself. Defendant otherwise denies the allegations set forth in this paragraph.

24.     Defendant admits that its General Counsel, Thomas McKeever, sent a letter to ETS's Director of Corporate Contracts, Alyce Diaz, in December 2008, giving notice to ETS of its breach of the License Agreement, and the content of which speaks for itself. Defendant otherwise denies the allegations set forth in this paragraph.

25.     Defendant admits that it received a letter from Joseph Melnik, outside counsel for ETS, dated May 12, 2009, the content of which speaks for itself. Defendant otherwise denies the allegations set forth in this paragraph.

26.     Paragraph 26, at least in part, is a statement of Plaintiff's legal position to which no response is necessary or appropriate. Defendant admits that it received a letter from Joseph Melnik, outside counsel for ETS, dated May 12, 2009, the content of which speaks for itself. Defendant otherwise denies the allegations set forth in this paragraph.

27.     Paragraph 27, at least in part, is a statement of Plaintiff's legal position to which no response is necessary or appropriate. Defendant admits that it received a letter from Joseph Melnik,

outside counsel for ETS, dated May 12, 2009, the content of which speaks for itself. Defendant otherwise denies the allegations set forth in this paragraph.

28.    Defendant admits that it received a letter from Joseph Melnik, outside counsel for ETS, dated May 12, 2009, the content of which speaks for itself. Defendant otherwise denies the allegations set forth in this paragraph.

29.    Paragraph 29, at least in part, is a statement of Plaintiff's legal position to which no response is necessary or appropriate. Defendant admits that Dan Earls sent a letter to Mr. Melnik dated August 12, 2009, the content of which speaks for itself. Defendant otherwise denies the allegations set forth in this paragraph.

30.    Defendant admits that Joseph Melnik sent an email to Dan Earls on or about September 21, 2009, the content of which speaks for itself. Defendant otherwise denies the allegations set forth in this paragraph.

31.    At this time, Defendant does not have knowledge or information sufficient to form a belief about the truth of the allegations set forth in this paragraph and on that basis denies them.

32.    Defendant admits that Dylan Boudraa sent ETS a letter dated February 22, 2010. Defendant denies having knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in this paragraph and on that basis denies them.

33.    Defendant admits that Dylan Boudraa sent ETS a letter dated February 22, 2010, the content of which speaks for itself. Defendant otherwise denies the allegations set forth in this paragraph.

34.    Paragraph 34 is a statement of Plaintiff's legal position to which no response is necessary or appropriate. To the extent a response is required, Defendant denies the allegations in this Paragraph.

35.     The first sentence of Paragraph 35, in part, is a statement of Plaintiff's legal position to which no response is required.  Defendant denies having knowledge or information sufficient to form a belief as to whether ETS initiated efforts to move to a different software platform for generating its test reports.  Defendant otherwise denies the allegations set forth in this paragraph.

## COUNT I

36.     Defendant incorporates by reference each and every response to the allegations set forth in paragraphs 1-35 inclusive, as if they were fully set forth herein.

37.     Admitted.

38.     Admitted.

39.     (a)     Denied

        (b)     Denied

        (c)     Denied

        (d)     Denied

        (e)     Denied

        (f)     Denied

## COUNT II

40.     Defendant incorporates by reference each and every response to the allegations set forth in paragraphs 1-39 inclusive, as if they were fully set forth herein.

41.     Defendant admits that the License Agreement was a valid and enforceable contract between the parties prior to termination.

42.     Denied.

43.     Denied.

44.     Denied.

## COUNT III

45.     Defendant incorporates by reference each and every response to the allegations set forth in paragraphs 1-44 inclusive, as if they were fully set forth herein.

46.     Defendant admits that the Licensing Agreement was a valid and enforceable contract between the parties prior to termination.

47.     Denied.

48.     Denied.

49.     Denied.

## COUNT IV

50.     Defendant incorporates by reference each and every response to the allegations set forth in paragraphs 1-49 inclusive, as if they were fully set forth herein.

51.     This paragraph consists of legal conclusions, as to which no response is required.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

## DEFENSES

Defendant sets forth the following affirmative and other defenses.  Defendant does not hereby assume the burden of proof with respect to those matters as to which, pursuant to law, Plaintiff bears the burden.

1.     The claims alleged in the Complaint fall to state a cause of action upon which relief may be granted.

2.     The claims alleged in the Complaint are barred by the doctrine of unclean hands.

3.     The claims alleged in the Complaint are barred by the doctrine of laches.

4.      The claims alleged in the Complaint are barred by the doctrine of waiver.

5.      The claims alleged in the Complaint are barred by the doctrine of estoppel.

6.      The claims alleged in the Complaint are barred, in whole or in part, because Plaintiff has failed to mitigate its damages, if any.

7.      The claims alleged in the Complaint are barred, in whole or in part, by the applicable statutes of limitation.

8.      The claims alleged in the Complaint are barred on the ground that Actuate's performance was excused under the License Agreement.

9.      The claims alleged in the Complaint are barred by reason of ETS's misrepresentation and fraudulent concealment.

10.     The claims alleged in the Complaint are barred because Actuate's conduct is justified as good faith acts to protect its own existing legal, contractual, and/or economic interests.

11.     Actuate reserves herein the right to assert additional defenses that are revealed by Actuate's investigation of this action or through discovery.

## COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff Actuate Corporation ("Actuate"), in support of its Counterclaims against Plaintiff-Counterclaim Defendant Educational Testing Service ("ETS"), alleges as follows:

## PARTIES

1.      Actuate is a corporation incorporated in the State of Delaware, with its headquarters located at 2207 Bridgepointe Parkway, Suite 500, San Mateo, California.

2.      Actuate is informed and believes that Counterclaim-Defendant ETS is organized and existing under the Education Law of the State of New York, with its principal place of business at 666 Rosedale Road in Princeton, New Jersey.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of these counterclaims pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.  Actuate's copyright infringement claim presents a federal question, and its other claims are part of the same case and controversy.  Jurisdiction is also proper pursuant to 28 U.S.C. § 1332, as the matter in controversy is between citizens of different states, and the amount in controversy exceeds $75,000.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)(2).  Counterclaim Defendant ETS has its principal place of business in, and is therefore a resident of, New Jersey.

## GENERAL ALLEGATIONS

5.      On December 22, 2002, ETS entered into a Purchase Authorization Letter ("PAL") to license production software from Actuate.  The CPU-based production software license granted pursuant to the PAL permitted ETS to run the software on one CPU.

6.      The CPU-based production software license allowed ETS to utilize an iServer and three additional specified software options: Page Level Security, Multi-Application, and e-Report.

7.      Prior to installing the production software on its server, ETS agreed to the terms and conditions of a Software License Agreement governing the use of the software (the "2002 SLA").

8.      The 2002 SLA states that "You shall not copy or modify any portion of the Software other than that you may make one (1) copy of the computer program portion of the Software solely for archival purposes."

9.      Upon information and belief, ETS copied the Actuate software it had licensed from Actuate in December 2002 and installed on a Sun Solaris hardware system to a Linux hardware system sometime in or around April 2005.

10.     Actuate and ETS entered into a License Agreement on or about March 30, 2005 (the "2005 License Agreement") pursuant to which Actuate licensed additional CPU-based software

licenses for limited and specified applications, as well as developer-specific development licenses. As of October 2008, ETS had the following licenses to Actuate software: (a) CPU-based production software licenses for eight CPUs, and (b) iServer Developer Pack software licenses for five Named Developers.

11.     On or about March 31, 2005, Actuate sent by email to ETS   REDACTED

REDACTED                          . These   REDACTED   were specifically tailored to permit access to Actuate's software in accordance with the options and license type elected and paid for by ETS.  In particular,   REDACTED   , which was provided for ETS's production environment, limited ETS's access to the iServer and eReport options (i.e., the specific production software options elected by ETS).  By contrast,   REDACTED   , which was provided for use in ETS's development environment only, was an iServer Developer Pack Named Developer REDACTED and therefore provided access to all of the options available on Actuate software.

12.     The development licenses granted to ETS were "Named Developer" licenses, which means that each of the five licenses permitted a "single, identified developer" to access Actuate's development software for development use only.  In other words, only five ETS employees were licensed to access development software, and the license was limited to use for "development."

13.     In October 2008, ETS requested the newest version of Actuate's software, Version 9, for a number of its servers.  Prior to performing the upgrade, Actuate requested that ETS identify the particular servers that comprised ETS's production environment, as well as the   REDACTED   that had been employed on those servers.

14.     ETS informed Actuate that it was using   REDACTED   for all four of its production servers.  The   REDACTED   enabled access to countless Actuate software options, including Spread, Report, MultiApp, PageSecure, Analysis, ActuateQuery, ActuateAnalytics,

SapBWConn, SapR3Conn, PeopleSoftConn, Online Archive, F1Report, DataIntegration, InfoObjectsCaching, RecordMatcher, and NameSearch.

15.    As a result of having installed                    REDACTED                    on production servers, multiple unauthorized users at ETS had full access to all of the applications and functionalities accessible via the              REDACTED

16.    Upon a further investigation into ETS's use of Actuate software, Actuate discovered that there had also been system activity by over 300 unique user accounts on ETS servers that employed development software.  The majority of these user names appear to have been formed using a unique first initial and last name.

17.    When confronted with this information, ETS did not deny the vast number of unique user accounts and system activity associated with its development servers.

18.    Actuate further discovered that two development servers on which the unauthorized users existed were labeled by ETS as "Testing" and "Staging."  Upon information and belief, ETS has been using the development environment to simulate production usage scenarios and perform quality assurance testing.

19.    In December 2008, Actuate's General Counsel sent ETS a formal, written notice in which he detailed ETS's breaches and demanded that ETS take corrective action.  Subsequent to Actuate's December 2008 notice, the parties engaged in numerous discussions concerning ETS's unauthorized conduct – via email, letter and even in person.

20.    With the parties still unable to reach a resolution, on or about February 22, 2010 – Actuate invoked its right to terminate. In accordance with Section 9.02 of the License Agreement, Actuate instructed ETS to immediately discontinue use of all licensed software and to return such software to Actuate.

21.     Upon information and belief, following Actuate's termination of the License Agreement, ETS continued to use the Actuate software licensed under the 2005 License Agreement for both production and development purposes.

## STATEMENT OF CLAIMS

### COUNT I

### (Breach of Contract)

22.     Actuate realleges and incorporates by reference paragraphs 1 through 21 above as though fully set forth herein.

23.     The 2002 SLA and 2005 License Agreement constitute writings to which Actuate and ETS were parties and through which Actuate provided ETS licenses to use Actuate software. Each of these agreements was a valid and enforceable contract supported by adequate consideration.

24.     Actuate fulfilled all of its material obligations under the license agreements that were not excused by ETS's actions.

25.     By its conduct described above, ETS breached the 2002 SLA and the 2005 License Agreement.

26.     As a result of ETS's breaches, Actuate was and continues to be damaged, including but not limited to by being deprived of the license and maintenance fees ETS was obligated to pay under the agreements.

### COUNT II

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

27.     Actuate realleges and incorporates by reference paragraphs 1 through 26 above as though fully set forth herein.

28.     Both the 2002 SLA and the 2005 License Agreement contained covenants of good faith and fair dealing implied by law.

29.    In addition or in the alternative to breaching the express obligations set forth in the 2002 SLA and the 2005 License Agreement, ETS's conduct as set forth above breached the implied covenant of good faith and fair dealing.

30.    As a result of ETS's breach of the implied covenant of good faith and fair dealing, Actuate has suffered and will continue to suffer damages.

**COUNT III**

**(Copyright Infringement)**

31.    Actuate realleges and incorporates by reference paragraphs 1 through 30 above as through fully set forth herein.

32.    Actuate owns valid and enforceable U.S. copyrights covering the Actuate software licensed to ETS under the 2002 SLA and 2005 License Agreement, and for which it has received registration certificates from the U.S. Copyright office.  The registration numbers for the copyrights at issue are as follows:

| | | | |
|---|---|---|---|
| TX0006863869 | TX0006862885 | TX0006862880 | TX0006862866 |
| TX0006348889 | TX0006348888 | TX0006348887 | TX0006348886 |
| TX0006348885 | TX0006348884 | TX0006348883 | TX0006348882 |
| TX0006348881 | TX0006348880 | TX0006348879 | TX0006348878 |
| TX0006348877 | TX0006348876 | TX0006348875 | TX0006348874 |
| TX0006348873 | TX0006348872 | TX0006348871 | TX0006348870 |

The licensed Actuate Software is covered by one or more of these Actuate Copyrights.

33.    ETS, its employees and/or its agents, copied and/or used the Actuate software in violation of the scope of the 2002 SLA and the 2005 License Agreement.

34.    ETS, its employees, and its agents copied and/or used copies of Actuate software after termination of the licenses without authorization or consent.

35.    ETS's unlicensed use and copying of the Actuate software constitutes infringement of Actuate's registered copyrights covering the Actuate software pursuant to 17 U.S.C. § 106.

36.     ETS's past and ongoing infringement were knowing and willful.  Prior to this suit, Actuate repeatedly informed ETS that Actuate believed that ETS was exceeding the scope of the parties' license agreements.

37.     In light of ETS's ongoing, knowing and willful infringement of Actuate's copyrights, Actuate is entitled to injunctive relief pursuant to 17 U.S.C. § 502.  Actuate is also entitled to its actual damages suffered as a result of the infringement.  In the alternative, Actuate may elect to seek statutory damages.  Actuate is also entitled to its fees and costs associated with this action, pursuant to 17 U.S.C. § 505.

## PRAYER FOR RELIEF

WHEREFORE, Actuate prays for judgment against ETS as follows:

A.     Dismiss the Complaint with prejudice and deny the relief requested by the Complaint;

B.     Grant preliminary and permanent injunctive relief barring Counterclaim-Defendant and their affiliates from accessing or providing access to the Actuate software;

C.     Award Actuate its compensatory damages, including but not limited to amounts due under the license agreements;

D.     Aware costs of suit and attorneys' fees pursuant, but not limited, to 17 U.S.C. § 505;

E.     Award Actuate pre and post judgment interest to the maximum extent permitted by law; and

F.     Award Actuate such other relief as the Court may deem proper.

## JURY DEMAND

Actuate hereby demands a trial by jury on all issues so triable.


Dated: April 19, 2010                         WILSON SONSINI GOODRICH & ROSATI,
                                              PROFESSIONAL CORPORATION


                                              By: s/Tonia Ouellette Klausner

                                              Tonia Ouellette Klausner
                                              Wilson Sonsini Goodrich & Rosati, P.C.
                                              1301 Avenue of the Americas
                                              40th Floor
                                              New York, New York 10019-6022
                                              (212) 999-5800
                                              tklausner@wsgr.com